**STATE of Tennessee, Appellee,**

v.

**Hattie Mae HAMPTON, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

March 13, 1980.

Permission to Appeal Denied by Supreme Court June 30, 1980.

**330**

Marvin E. Ballin, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Sylvia F. Brown, Asst. Atty. Gen., Nashville, Jerry Harris, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

DWYER, Judge.

This is an appeal as of right from a conviction of murder in the second degree, T.C.A. § 39–2403, with punishment of confinement for ten years. The jury found that that offense was committed by the use of a firearm, T.C.A. § 39–4914, and sentenced the appellant to an additional five years. The jury also found the appellant guilty of carrying a pistol with the intent to go armed, T.C.A. § 39–4901, and assessed her punishment at a fine of $500.

We will discuss the evidence. Around 7:00 a. m. on September 30, 1978, Claude Bynum was shot and killed by the appellant when she found him in the bedroom of his girlfriend's house at 1198 Elder Street in Memphis. Bynum was married, but had had a relationship with the appellant, his co-worker, for twenty-eight years. During the last few months of that relationship the decedent had been seeing Mayola Ratliff, in whose home he was killed. Ms. Ratliff testified for the State that on several occasions when she was out with Bynum the appellant followed them and cursed Bynum. She said that she and Bynum had been out together the night before he was killed and that they had returned to her house at 4:00 a. m. and had gone to bed. According to her she got up at about 7:00 a. m., heard the doorbell ring, and, seeing the appellant's car outside headed to the door to stop her. Ms. Ratliff met the appellant, who was holding a pistol, in the hall, went into her children's bedroom to tell them to be still, then called the police. While she was phoning, she heard three shots, then went back into the hall where the appellant pointed the gun at her. As the appellant left, Ratliff found Bynum on the floor of the bedroom bleeding and put a pillow under his head. Thirty minutes after the shooting she received a phone call from the appellant who asked her if the S.O.B. was dead and said that if not, he should have been. On cross-examination, Ratliff testified that the decedent always carried a pistol and brought it from his car into the house when he retired, but that he was unarmed the evening of September 29th and at the time he was shot.

Medical testimony showed that Bynum died from loss of blood caused by a gunshot wound to the mouth. The projectile passed through the internal carotid artery, which supplies blood to the head.

The appellant surrendered to the authorities on the day of the shooting and gave a written statement the next day. In that statement she said that she had been trying to break up with Bynum, but had agreed to meet him the night before the shooting, but that he failed to appear. She explained that on the morning of the shooting she

went to Ratliff's house looking for Bynum and that she had the pistol in her hand when she went into the bedroom. She said that she found Bynum and Ratliff naked, that Bynum said that he would kick her teeth out when he got his clothes, and that she panicked and shot him twice. She also said that Bynum had on prior occasions threatened her and struck her with a pistol.

The appellant's testimony at trial conflicted with her statement in that she testified that she did not have the pistol in her hand as she walked down the hall and that she never entered the bedroom where Bynum was in bed, but shot him from the hall. She also testified that she feared for her life, knowing that Bynum was in the habit of carrying a pistol which he always left on the dresser near his pants when he was in bed. She said that she thought he was reaching for his gun when he moved toward the dresser and that she shot only to scare him so that she could leave the house. The appellant also described her illicit relationship with Bynum which lasted for twenty-eight years and during which he often physically abused her. She said that Bynum fathered four of her five children.

Two of the appellant's children testified that Bynum was always armed and had on occasion threatened their mother with a gun and that he had beaten her many times.

■ In her first issue for review the appellant maintains that the evidence preponderates against her guilt and in favor of her innocence, arguing that Bynum was a man of violence, always armed, and that he had threatened her with a pistol and beaten her. She asserts that she knew of his violent propensities and feared for her life when she shot him. We reject her argument that the jury disregarded the evidence in reaching its verdict. Police testimony showed that no weapons were found anywhere in Ratliff's house or in Bynum's car. The evidence shows that the appellant went armed to the house of her long-time lover's new girlfriend and shot Bynum as he stood naked in Ms. Ratliff's bedroom. The jury obviously endorsed the State's theory that the appellant shot down an unarmed man and rejected the appellant's plea of self defense. The use of the weapon provided the element of malice necessary for a conviction for second degree murder. Since the appellant has not carried her burden of showing that the evidence preponderates against her guilt and in favor of her innocence, *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973), and since we are further satisfied that under the evidence adduced by the State, any reasonable jury would have found the appellant guilty beyond a reasonable doubt and to a moral certainty, Tenn. R.App.P. 13(e), we overrule this issue.

■ We also reject the appellant's bald assertion in her second issue that the punishment is excessive. We think not. When the punishment is within the limits prescribed by law it cannot be said to be excessive. *Headrick v. State*, 519 S.W.2d 403, 406 (Tenn.Cr.App.1974). Since the sentence here is within those limits, we overrule this issue.

■ In the appellant's third issue she argues that the trial court erred in overruling her motion to dismiss the second count of the indictment charging violation of T.C.A. § 39–4914, using a firearm in the commission of a felony. First, she contends that T.C.A. § 40–2901, which authorizes the trial judge to suspend the execution of a sentence following conviction, is in direct conflict with that portion of T.C.A. § 39–4914, which prohibits the suspension of the penalty imposed thereunder. However, since second degree murder is specifically exempted from the trial court's authority to suspend sentences under T.C.A. § 40–2901, the issue of whether these two statutes conflict is not before us today. At any rate, we see no conflict between the general grant of authority to trial courts in § 40–2901 to suspend sentences and the specific exception to that authority in § 39–4914. The appellant also argues that T.C.A. § 39–4914 is unconstitutional because it infringes upon judicial authority in commanding grand juries to indict defendants in this type of case. This statute, however, does not create a separate offense; it simply

prescribes a penalty when a petit jury finds that a firearm was used to perpetrate a crime. *State v. Hudson*, 562 S.W.2d 416, 419 (Tenn.1978). Because it is the prerogative of the legislature to provide penalties, *Sharp v. State*, 513 S.W.2d 189, 191 (Tenn. Cr.App.1974), we reject the argument that the statute infringes on the judiciary.

In another part of her third issue the appellant argues that the trial court's charge to the jury that they could infer the malice ingredient of second degree murder from the use of a deadly weapon somehow amounts to allowing the jury to convict her of manslaughter and enhance the punishment. Citing *State v. Hudson*, she asserts that it was improper for her punishment to be further enhanced under T.C.A. § 39–4914. We reject this argument. It is apparent that the jury convicted the appellant of second degree murder, a degree of homicide separate and distinct from manslaughter, and properly enhanced the punishment under § 39–4914. Since the court's charge accurately stated the law about the presumption of malice, we find no merit in this part of the third issue and overrule that issue in its entirety.

In her fourth issue the appellant maintains that the trial court should have charged her special request under T.C.A. § 39–4914:

"The imposition of any sentence required by this section shall not be suspended, deferred or withheld nor shall the defendant be eligible for parole prior to serving said sentence."

We find no error in the trial court's denying this request. The legal effect of the jury's verdict is irrelevant to the issue of guilt or innocence and is not a proper consideration for the jury. *Farris v. State*, 535 S.W.2d 608 (Tenn.1978); *Edwards v. State*, 540 S.W.2d 641 (Tenn.1976). This issue is overruled.

Finally, the appellant argues that the trial court erred in allowing into evidence, over her objection, color photographs of the bedroom in which the deceased was found because the photographs had no probative value and because, by showing a great deal of blood, they inflamed the jury. We disagree. The trial court found that the photographs were probative as depicting the scene of the crime and relevant as showing the location of the dresser and the absence of any weapon from the top of the dresser. The Tennessee Supreme Court had this to say about this issue:

"[T]he admissibility of photographs lies within the discretion of the trial court whose ruling in this respect will not be overturned on appeal except upon a clear showing of an abuse of discretion." *State v. Banks*, 564 S.W.2d 947, 949 (Tenn.1978).

Since it is clear that the prejudicial effect of these photographs did not outweigh their probative value, *see* Fed.R.Evid. 403 (adopted in Tennessee by *Banks*, 564 S.W.2d at 951), we find no abuse of the trial court's discretion in allowing them into evidence. This issue is overruled.

The judgment of the trial court is affirmed.

DAUGHTREY and CORNELIUS, JJ., concur.