BIRCH, J.,
filed a concurring/dissenting opinion.
APPENDIX
(Excerpts From the Court of Criminal Appeals’ Decision)

OPINION

[Deleted: Summary of Facts]
[Deleted: Forfeiture of Right to Counsel]

Consolidation of Indictments

Appellant Carruthers claims the trial court erred by not requiring the state to elect upon which indictments it intended to proceed upon at trial. In March 1994, both appellants were originally indicted on three counts of first degree murder. Subsequently, in November 1995, both appellants were indicted on three counts of especially aggravated kidnapping and one count of especially aggravated robbery. All of these offenses arose from the same criminal episode and involved the same three victims. The trial date in this matter was originally scheduled for February 1995, prior to the return of the second set of indictments. However, due mainly to Carruthers’ conduct regarding counsel, the trial was eventually continued several times until the Spring of 1996.
Carruthers contends that the murder indictments should have been dismissed. Because the state was not forced to elect between the two indictments, according to the appellant’s argument, he “could not reasonably have known whether he was defending murder charges or charges of kidnapping and robbery.” The appellant further claims that if the trial court had followed “normal procedure,” he would have never been tried on the murder charges. The state disagrees and asserts that the appellant was properly tried on all charges.
Tenn.R.Crim.P. 8(a) (emphasis added) regarding mandatory joinder of offenses provides:
Two or more offenses shall he joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13 if the offenses are based upon the same conduct or arise from the same criminal episode and if such offenses are known to the appropriate prosecuting official at the time of the return of the indictment(s), presentments), or information(s) and if they are within the jurisdiction of a single court. A defendant shall not be subject to separate trials for multiple offenses falling within this subsection unless they are severed pursuant to Rule 14.
*573 The Advisory Commission Comments to Rule 8 further provide, in pertinent part:
This rule is designed to encourage the disposition in a single trial of multiple offenses arising from the same conduct and from the same criminal episode, and should therefore promote efficiency and economy. Where such joinder of offenses might give rise to an injustice, Rule 14(b)(2) allows the trial court to relax the rule.
The Commission wishes to make clear that section (a) is meant to stop the practice by some prosecuting attorneys of “saving back” one or more charges arising from the same conduct or from the same criminal episode. Such other charges are barred from future prosecution if known to the appropriate prosecuting official at the time that the other prosecution is commenced, but deliberately not presented to a grand jury.
Carruthers’ argument ignores the basic premise behind the Rule. The purpose of Rule 8 is to promote efficient administration of justice and to protect the rights of the accused. The rule clearly permits a subsequently retened indictment to be joined with a previous indictment where the alleged offenses relate to the same criminal episode. See King v. State, 717 S.W.2d 306 (Tenn.Crim.App.1986). This practice, however, does have certain limitations which, as the comments note, safeguard an accused against prosecutorial abuse. For example, a prosecutor cannot simply decide to “save” charges on other offenses arising out of the same conduct until after a trial is had on the original charges. Obviously, this would result in multiple trials and prejudice the defendant. This concern, however, is not present in the case at hand because the subsequent indictments were returned well before the start of trial.
Although there is no written trial court order consolidating the indictments in this case, not only was consolidation mandated by the rules, it was clearly understood by the court and all parties involved in this case. As soon as the 1995 indictments were returned, the appellants filed a motion to dismiss. After a hearing on December 19, 1995, the trial court denied the motion, and the matter proceeded on all charges. In fact, counsel admitted that they knew they were going to trial on the murder charges; they moved to dismiss the new charges. Carruthers’ claim that he did not know what charges the state was prosecuting is wholly without merit. Not only did the appellant file a motion to dismiss the subsequent charges, which was denied, the style of the pleadings and orders filed in this case after the return of the 1995 indictments, including letters Carruthers wrote to his attorney, refer to both the 1994 and 1995 indictments. Moreover, jury selection had already started in early January 1996, when the state moved for a continuance. There certainly was no confusion as to charges being tried when a jury was again selected and trial finally began three months later in April 1996. All of the indictments were read to the jury at the beginning of the trial.
As this Court observed in King,
We do not perceive that any evil results from subsequent indictments being returned against a defendant charging him with additional offenses which are based on the same conduct or which arise from the same criminal episode upon which prior indictments have been returned; when the defendant has not been tried on any of the offenses at the time the subsequent indictments are returned. As previously noted, the purpose of Rule 8 is to prevent multiple trials on charges arising from the same conduct or from the same criminal episode except under the circumstances stated in the rule.
717 S.W.2d at 308. To follow the appellant’s suggestion in this case would result in the non-prosecution of three murder charges. Surely this type of windfall was not contemplated by the drafters of the Rules. The appellant has simply failed to show how he was unprepared to defend on kidnapping and robbery charges that *574 stemmed from the same criminal episode in which three individuals were killed.
[Deleted: Grand Jury Proceedings]

Letters from Carruthers to Maze

Next, Carruthers claims that the trial court erroneously allowed into evidence two letters the appellant wrote to Jimmy Maze. In these letters, Carruthers refers to a master plan for making money. The state alleged that this plan involved the murder of Marcellos Anderson and the theft of his drugs and money. The appellant argues that the letters are too vague, have no evidentiary value, and are highly prejudicial.
The admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with that discretion absent a clear showing of abuse. See State v. Howard, 926 S.W.2d 579, 585 (Tenn.Crim.App.1996) (overruled on other grounds). Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Rule 401, Tenn.R.Evid. However, relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.” Rule 403. Of course, simply because evidence is prejudicial does not mean the evidence must be excluded as a matter of law. See State v. Gentry, 881 S.W.2d 1, 6 (Tenn.Crim.App.1993), perm, to app. denied, (Tenn.1994). The Court must still determine the relevance of the evidence and weigh its probative value against any undue prejudice.
The appellant argues that the letters are irrelevant because they were written too far in advance of the actual murders and do not refer to the victims or mention how the money would be made. He also suggests that the letters are improper evidence of other crimes or wrongdoings. After a jury-out hearing as to whether these letters should be admitted, the trial court made the following findings:
But the proof itself, I think, goes directly toward establishing this one additional link, one additional factor in establishing, from the State’s perspective, the existence of a conspiracy. It’s very relevant, in my judgment.
It talks about a master plan. It talks about having the support personnel lined up. It talks about having the manpower lined up. It talks about “joining with me” and getting with the program, in effect, and “get with me when I get out.” And it makes reference to the fact that he is trying to get transferred to MLRC, Mark Luttrell Reception Center, which then ties in to the testimony that Charles Smith gave, which would— of having overheard some conversations along these line [sic] as well.
You know, again, the jury may not believe any of it, and that’s up to the jury. Or they may believe it all. But it all ties in, and it all ties together. The letters tie in with what Mr. Smith testified to....
And again, this is additionally why these matters need to be heard during the trial and not pretrial, because I now have the benefit of having heard Charles Smith’s testimony and having heard other testimony now that Mr. Maze is now on the stand, and I can better judge how his testimony fits in with all of the other testimony.
The trial judge clearly explained how these letters were relevant to the issues being tried, and having reviewed the transcript of the jury-out hearing, we are satisfied that the judge did not abuse his discretion in admitting these letters into evidence. Their probative value substantially outweighed any prejudicial effect. This issue is without merit.
[Deleted: Statement of Co-Conspirator]

Evidence of Other Perpetrators

Both appellants argue the trial court limited their ability to establish that other *575 people involved in the Memphis drug trade had motives to kill the victims in this case. Again, the admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with that discretion absent a clear showing of abuse. See State v. Howard, 926 S.W.2d 579, 585 (Tenn.Crim.App.1996). Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Rule 401, Tenn.R.Evid. However, relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.” Rule 403.
As is commonly recognized, an accused is entitled to present evidence implicating others in the crime. See Green v. State, 154 Tenn. 26, 285 S.W. 554 (1926); Sawyers v. State, 83 Tenn. 694 (1885); State v. Spurlock, 874 S.W.2d 602, 612-13 (Tenn. Crim.App.1993). Evidence in support of this third party defense, however, must conform to the general rules governing the admissibility of evidence. State v. McAlister, 751 S.W.2d 436, 439 (Tenn.Crim.App. 1987). The evidence must be the type that would be admissible against the third party if he or she were on trial, and the proof must be limited to facts inconsistent with the appellant’s guilt. State v.. Kilburn, 782 S.W.2d 199, 204-05 (Tenn.Crim.App. 1989). Accordingly, hearsay evidence implicating another individual would not be admissible.
Having reviewed the record in light of the appellants’ claims, we find that the trial court did not exclude any relevant admissible evidence tending to implicate others in the murders while exonerating the appellants. The jury was well aware that Marcellos Anderson was heavily involved in the drug trade in Memphis. The jury heard evidence about Anderson’s drug dealings with Johnson and Adair. The jury heard that Anderson and Adair had previously been shot by others in drive-by shootings. They heard that Andre Tucker, the brother of one of the victims in this case, was subsequently killed after the appellants had been arrested on the present charges. As the state notes, this evidence clearly suggests that the killings in the drug world were still happening. The evidence the appellants refer to was either hearsay (testimony that Anderson was in debt to Colombian drug dealers) or cumulative and would have confused the issues and misled the jury (attacks on others involved in the Memphis drug trade). Again, the jury knew this case centered around activities in the drug world and they could reasonably have used their common knowledge to conclude that there were many players involved. The evidence in this case, however, pointed to the guilt of the appellants. This issue is without merit.

Competency of Witness Nakeita Shaw

Carruthers next claims that the trial court erred by not ordering a competency evaluation of Nakeita Shaw. Prior to trial, counsel representing Carruthers at the time requested an evaluation of Shaw and any records of a history of mental treatment. The state indicated that it had no record of treatment. The trial court denied the request. During the first jury selection, the state asked for a trial continuance because Shaw had checked herself into a hospital for depression and could not appear in court. The court granted the continuance. Carruthers claims, however, that this fact should have been a compelling enough reason for the trial court to exercise its inherent power to order a competency evaluation.
In support of his claim, Carruthers relies upon State v. Garland, 617 S.W.2d 176 (Tenn.Crim.App.1981). Carruthers’ reliance is misplaced. In Garland, this Court specifically held “[tjhere is no statutory or case law in Tennessee authorizing a court to compel a prospective witness, not a party interested in the case and present *576 only by compulsion of a subpoena, to submit to a psychiatric examination.” Id. at 185. The Court further held that the ruling in Forbes v. State, 559 S.W.2d 318 (Tenn.1977), that the trial court has the inherent power to compel a psychiatric or psychological examination of the victim, was restricted to complaining victims in sex cases. The Court refused to broaden this holding, and neither of the parties in the case before us have cited to any authority which has done so. The case cited by the appellant involves the physical examination of a complainant in a sex case. State v. Barone, 852 S.W.2d 216 (Tenn. 1993). It clearly appears that the court ordered examination of witnesses has been limited to complainants in sex cases, and we do not intend to broaden the holding in Forbes any further.
Tenn.R.Evid. 601 provides that every person is presumed competent to be a witness. The Advisory Commission Comments to this rule state that “[v]irtually all witnesses may be permitted to testify: children, mentally incompetent persons, convicted felons.” (Emphasis added). Accordingly, any prospective witness may testify as long as they have personal knowledge of the matter about which they are testifying, Rule 602, and swear they will testify truthfully, Rule 603. The trial judge has the discretion to determine whether a witness is competent to testify. State v. Caughron, 855 S.W.2d 526, 538 (Tenn.1993). This determination will not be disturbed on appeal absent an abuse of discretion. State v. Howard, 926 S.W.2d 579, 584 (Tenn.Crim.App.1996) (overruled on other grounds). In Garland, this Court held:
A lunatic or a person adjudged insane is competent as a witness if, at the time he is offered as a witness, he has sufficient understanding to comprehend the obligation of an oath and capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue.
617 S.W.2d at 184.
Despite the above-cited authority, the state claims Carruthers has waived this issue 1) by not renewing his request for a mental examination of Shaw before she took the witness stand and 2) by failing to question her on cross-examination about her hospitalization. See T.R.A.P. 36(a). We agree. Since the trial court did not have the authority to order a mental evaluation of Shaw, and because Carruthers failed to preserve the issue, this matter has been waived. Regardless, even if Shaw had been found to be mentally incompetent, she could have testified as long as she was able to understand the obligation of an oath and had personal knowledge of the matter to which she testified. See Caughron, 855 S.W.2d at 538. The trial judge apparently determined that she was competent according to the law to testify, and there is nothing in the record to suggest he abused his discretion. This issue is without merit.

Photographic Evidence

Both appellants claim that the videotape and photographic evidence of the crime scene and deceased victims were irrelevant, cumulative, highly prejudicial and erroneously admitted to inflame the passion of the jury. They claim this evidence did not assist the jury in identifying the perpetrators and was cumulative of the oral testimony of the witnesses. Furthermore, the appellants argue the evidence should not have been shown to the jury because the appellants offered to stipulate to the fact that the victims were found bound in the grave site.
The admissibility of relevant photographs and videotapes of the crime scene and victims is within the sound discretion of the trial judge, and his or her ruling on admissibility will not be disturbed on appeal absent a clear showing of an abuse of that discretion. State v. Banks, 564 S.W.2d 947, 949 (Tenn.1978). See also, *577 State v. Bigbee, 885 S.W.2d 797, 807 (Tenn. 1994); State v. Van Tran, 864 S.W.2d 465, 477 (Tenn.1993). Moreover, the modern trend is to vest more discretion in the trial judge’s rulings on admissibility. See Banks, 564 S.W.2d at 949; State v. Bailey, 01C01-9403-CC-00105, 1995 WL 424996 (Tenn.Crim.App., Nashville, July 20, 1995); perm, to app. denied, (Tenn. Jan. 8, 1996).
Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Rule 401, Tenn.R.Evid. However, relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.” Rule 403. Of course, simply because evidence is prejudicial does not mean the evidence must be excluded as a matter of law. See State v. Gentry, 881 S.W.2d 1, 6 (Tenn.Crim. App.1993). The court must still determine the relevance of the visual evidence and weigh its probative value against any undue prejudice. Along these lines, the trial court should be guided by the following matters in determining the admissibility of relevant videotape and photographic evidence: the accuracy and clarity of the picture and its value as evidence; whether the picture depicts the body as it was found; the adequacy of testimonial evidence in relating the facts to the jury; and the need for the evidence to establish a prima facie case of guilt or to rebut the defendant’s contentions. Banks, 564 S.W.2d at 951.
Contrary to the assertion of the appellants, the identity of the perpetrators was not the only issue in this case. The state also had to prove to the jury the existence of the elements of all the offenses. The video shows the location of the grave site and the efforts to conceal the presence of the bodies. The trial court limited the number of still photographs, but allowed in several to show the restraints on the victims. As the state observes, the trial judge in this case was very conscientious in his review of the admission of the photographic evidence. The evidence was relevant to the state’s case and assisted the jury in its finding that the state proved each element of the offenses. We do not find that the evidence was cumulative or unduly prejudicial. Moreover, the admissibility of photographic evidence does not depend upon the defendant’s offer to stipulate to the facts depicted therein, especially when the prosecution does not agree to the stipulation. See State v. Schafer, 973 S.W.2d 269, 274-75 (Tenn.Crim.App.1997); State v. Griffis, 964 S.W.2d 577, 595 (Tenn. Crim.App.1997) (“an accused cannot marshal the evidence of the state by simply offering to stipulate to a fact for the purpose of barring the state from introducing admissible, demonstrative evidence the accused does not want the jury to see”). The trial court did not abuse its discretion in this case, therefore, this issue is without merit.
Montgomery also challenges the introduction of photographs of the victims before they were murdered. The appellant cites State v. Dicks, 615 S.W.2d 126, 128 (Tenn.1981). However, in State v. Nesbit, 978 S.W.2d 872, 901-02 (Tenn.1998), the Supreme Court adopted that portion of this Court’s opinion which held that a photograph of the victim while alive was relevant to the state’s case-in-chief in proving that the person murdered was the same person named in the indictment. We find this evidence was not cumulative and was properly admitted.
[Deleted: Sentencing on Non-capital Offenses]

Prosecutorial Misconduct

Both appellants claim the prosecutors made improper arguments during both phases of the trial which require a remand for a new trial.
As is commonly recognized, closing arguments are an important tool for the *578 parties during the trial process. Consequently, the attorneys are usually given wide latitude in the scope of their arguments, see State v. Bigbee, 885 S.W.2d 797, 809 (Tenn.1994), and trial judges, in turn, are accorded wide discretion in their control of those arguments, see State v. Zirkle, 910 S.W.2d 874, 888 (Tenn.Crim.App. 1995). Such scope and discretion, however, is not completely unfettered. Argument must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law. Coker v. State, 911 S.W.2d 357, 368 (Tenn.Crim. App.1995). The test for determining whether the prosecuting attorney committed reversible misconduct in the argument is “whether the improper conduct could have affected the verdict to the prejudice of the defendant.” Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965). The following factors have been recognized to aid the Court in this determination: 1) the conduct complained of, viewed in light of the facts and circumstances of the case; 2) the curative measures undertaken by the court and the prosecutor; 3) the intent of the prosecutor in making the improper statement; 4) the cumulative effect of the improper conduct and any other errors in the record; and 5) the relative strength or weakness of the case. State v. Bigbee, 885 S.W.2d 797, 809 (Tenn.1994); State v. Buck, 670 S.W.2d 600, 609 (Tenn.1984).
Initially, Carruthers claims that because he was representing himself the trial court should have taken a more active role in guarding against prosecutorial misconduct during argument. As we noted earlier, there are certain perils a defendant faces when representing himself at trial. Knowing when to object during argument obviously is one of those perils. While the trial court can intervene sua sponte and take curative measures when the argument becomes blatantly improper, see, e.g., State v. Cauthern, 967 S.W.2d 726, 737 (Tenn.1998), the trial court must exercise its discretion and should not exert too much control over the arguments. The judge does not serve as a pro se defendant’s counselor during trial. The judge should intervene only when requested or when the judge deems proper in the interest of justice.
Carruthers refers to several instances of allegedly improper argument that occurred during the guilt phase of the trial. He claims the prosecutor improperly characterized him as a conniver and liar and accused him of manipulating the jury. Evidence was introduced that Carruthers was the mastermind behind these crimes, and therefore, any reference by the state in this regard was not improper. However, the prosecutor may not comment unfavorably upon the defendant’s pro se representation of himself or the presentation of his case. See Coker v. State, 911 S.W.2d 357, 368 (Tenn.Crim.App.1995). Nor should a prosecutor express his or her personal opinion about the credibility of witnesses, unless the comments are grounded upon evidence in the record. See State v. West, 767 S.W.2d 387, 394 (Tenn.1989). Moreover, a prosecutor is strictly prohibited from commenting on the defendant’s decision not to testify. Coker, 911 S.W.2d at 368. This would include his decision not to present any proof. However, a prosecutor’s statement that proof is unrefuted or uncontradieted is not an improper comment upon a defendant’s failure to testify. State v. Thomas, 818 S.W.2d 350, 364 (Tenn.Crim.App.1991); State v. Cowry, 697 S.W.2d 373, 378 (Tenn.Crim.App.1985). The prosecutor should also refrain from calling the defendant derogatory names. State v. Cauthern, 967 S.W.2d 726, 737 (Tenn.1998).
In this case, it was improper for the prosecutor to call the appellant names, such as a liar. However, we do not find improper the comments telling the jury to watch out for “pitfalls” and “mind games” and not to succumb to a “guilt trip.” The prosecutor was simply making reference to the strength of the state’s proof. Also, the *579 prosecutor should not have insinuated that Carruthers was trying to manipulate the jury or comment that Carruthers did not call any credible witnesses on his behalf. Contrary to Carruthers’ claim, however, we do not believe these comments improperly referred to Carruthers’ failure to testify. Similarly, Carruthers complains about the prosecutor’s statements that Carruthers was trying to manipulate the media. However, Alfredo Shaw testified about this. Moreover, the state is permitted to argue reasonable inferences from the evidence in the record. Coker, 911 S.W.2d at 368. The state’s argument in this respect was not improper. Carruth-ers also claims the state’s reference to the “second part” of Carruthers’ master plan mentioned in the letters he wrote to Maze was improper. Since this was brought up by the evidence, we do not think this comment was improper. Carruthers also claims the prosecutor’s statement to the jury that they have a responsibility to the victims’ family improperly appealed to the emotions and sympathies of the jury. See State v. Bigbee, 885 S.W.2d 797, 809 (Tenn. 1994). We agree. Finally, Carruthers contends the prosecutor’s comment that there is a “gap” in the evidence was improper. Carruthers claims this was an improper inference on his failure to testify. We disagree. The state’s case was based on circumstantial evidence and the prosecutor’s comment in this respect merely informed the jury that not all the pieces to the puzzle were presented at trial.
Both appellants complain about certain comments made by the prosecutor diming argument at the penalty phase of trial. Both appellants take issue with the prosecutor’s mention of the ten commandments in the Bible. Just recently, in State v. Middlebrooks, 995 S.W.2d 550, 559 (Tenn. 1999), our Supreme Court made the following comment regarding this type of argument:
We have condemned Biblical and scriptural references in a prosecutor’s closing argument so frequently that it is difficult not to conclude that the remarks in this case were made either with blatant disregard for our decisions or a level of astonishing ignorance of the state of law in this regard.
This argument by the prosecutor was obviously improper under the decisions of our Supreme Court.
Both appellants also contend that the state made improper victim impact argument. Victim impact evidence and argument during sentencing are not prohibited by the constitution or statute. See State v. Nesbit, 978 S.W.2d 872 (Tenn.1998). However, the argument must be relevant to the specific harm to the victim’s family, Middlebrooks, 995 S.W.2d at 558, and must be limited to “information designed to show those unique characteristics which provide a brief glimpse into the life of the individual who has been killed, the contemporaneous and prospective circumstances surrounding the individual’s death, and how those circumstances financially, emotionally, psychologically or physically impacted upon members of the victim’s family.” Nesbit, 978 S.W.2d at 891 (footnote omitted). The “victim’s family members’ characterization and opinion about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment.” Id. at 888 n. 8. Again, the prosecutor cannot simply appeal to the emotions and sympathies of the jury while invoking victim impact argument. Id. at 891 (citing State v. Bigbee, 885 S.W.2d 797 (Tenn. 1994)). We agree with the appellants that the prosecutor improperly commented that the family members who testified did not cry and had remained quiet during trial. Aso improper was the comment that the families “trust in you [the jury].” The family members could have testified that they missed the victims (emotional impact of victim’s death), and the comment by the prosecutor that they chose not to solicit this testimony was not improper.
Montgomery also claims that the prosecutor improperly asserted his personal *580 opinion into closing argument. While a prosecutor may not express a personal opinion or belief, comments during argument prefaced by phrases such as “I think” or “I submit” are unlikely to be adjudged opinions. Coker v. State, 911 S.W.2d 357, 368 (Tenn.Crim.App.1995). Accordingly, we do not believe the comments Montgomery complain about which contain these phrases were improper. Montgomery asserts that the prosecutor improperly read to the jury a dictionary definition of the term “mitigate” and improperly asked the jury to use that definition to determine whether any mitigating evidence was presented. According to Montgomery, the prosecutor erroneously told the jury that mitigating evidence is that which mitigates the crime, rather than that which mitigates the punishment. Although the prosecutor may have not clearly provided the jury with the legal meaning of mitigation, the trial judge properly instructed the jury and the jury is presumed to have followed those instructions. State v. Cribbs, 967 S.W.2d 773, 784 (Tenn. 1998). Finally, we agree with the state that the death penalty statute does not limit the state’s final closing argument to rebutting that which the defendant argued. T.C.A. § 39-13-204(d).
We find that the appellants have waived any challenge regarding the majority of the comments about which they complain because they failed to voice a contemporaneous objection. T.R.A.P. 36(a); see also State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim.App.1992). Nonetheless, we have reviewed the entire arguments of all parties, and considering the factors listed above, we find that the relatively few improper comments by the prosecutors did not affect the verdict to the prejudice of the appellants. This issue is without merit. However, we remind counsel of the warnings recently related by our Supreme Court in State v. Middlebrooks, 995 S.W.2d 550, 561 (Tenn.1999):
Those who interpret these cases as precedent for the view that improper closing argument and misconduct of this nature will be held harmless error in all cases do so at their own professional peril and at the risk that th'e misconduct, even if it does not prejudicially affect the verdict, may be deemed to be prejudicial to the judicial process as a whole and therefore require a new trial or sentencing hearing.
[Deleted: Gag Order]
[Deleted: Severance]
[Deleted: Testimony of Benton West and Nakeita Shaw]
[Deleted: Testimony of Terrell Adair, Andre Johnson and Chris Hines]
[Deleted: Opinion Testimony]
[Deleted: Jury Instructions]
[Deleted: Sufficiency of the Evidence]

Death Penalty Statute

Both appellants challenge the constitutionality of Tennessee’s death penalty statute. All of the numerous claims raised by the appellants have repeatedly been denied by our Supreme Court. See, e.g., State v. Burns, 979 S.W.2d 276 (Tenn. 1998) (adopting this Court’s review of this issue); State v. Smith, 893 S.W.2d 908 (Tenn.1994); State v. Brimmer, 876 S.W.2d 75 (Tenn.1994). Accordingly, these claims must fail. Carruthers also claims that the recent amendment to T.C.A. § 40-23-114 (1998 Supp.), which allows those capital case defendants who committed their offense prior to January 1, 1999, to elect to be put to death by lethal injection constitutes an unconstitutional delegation of legislative authority. We disagree. The statute clearly states that this class of offenders shall be put to death by electrocution. The statute, however, gives the offender the option to waive this method of execution and elect lethal injection instead. This is not a delegation of the legislature’s authority. This claim is without merit. At *581 any rate, this statute does not affect the appellants’ convictions or sentences.
[Deleted: Proportionality Review]
THOMAS T. WOODALL, JUDGE CONCUR:
WADE, Presiding Judge
TIPTON, Judge