# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 26, 2008 Session

## STATE OF TENNESSEE v. RE´LICKA DAJUAN ALLEN

**Direct Appeal from the Criminal Court for Knox County**
**No. 77455     Mary Beth Leibowitz, Judge**

---

**No. E2007-01018-CCA-R3-CD - Filed February 12, 2009**

---

Defendant, Re'Licka Dejuan Allen, was indicted on two counts of aggravated exploitation of a minor and one count of sexual exploitation of a minor. The State refused to comply with Defendant's requests for discovery by withholding the contents of Defendant's computer hard drive and other computer materials alleged to contain incriminating evidence. The State refused to disclose the requested discovery despite the trial court's issuance of two protective orders, the ruling of the appellate court on interlocutory appeal, and a third protective order by the trial court requiring disclosure. After a final hearing, the trial court suppressed the evidence and dismissed the indictment against Defendant. The State argues on appeal that the trial court erred in suppressing the evidence based upon the perceived threat of federal prosecution to defense counsel. Following our review of the parties' briefs, the record, and the applicable law, we reverse the judgment of the trial court, reinstate the indictment and remand for trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined and J. C. McLin, J., dissenting.

James A. H. Bell, Knoxville, Tennessee, for the appellant, Re'Licka Dajuan Allen.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kevin J. Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# I. BACKGROUND

Defendant was charged in a three-count indictment alleging sexual and aggravated sexual exploitation of a minor stemming from the possession of child pornography. Defendant's case was consolidated with another case presented by the State on interlocutory appeal. The facts of Defendant's underlying offenses were summarized in the appellate court's opinion as follows:

> [The defendant] was charged by the Knox County Grand Jury on June 17, 2003, with one count of sexual exploitation of a minor for possessing materials that included a minor engaged in sexual activity, and with two counts of aggravated sexual exploitation of a minor for possessing, with the intent to transport and with the intent to distribute, materials that included a minor engaged in sexual activity, in violation of Tennessee Code Annotated section 39-17-1004. Both cases involved material located on Defendants' computers. In [the defendant's] case, the material was originally discovered by a computer repair technician at a store where [the defendant] had taken his computer for repair. The technician informed his manager of his discovery, and the manager in turn contacted Knox County law enforcement.

*State v. Richard Allen Butler*, No. E2004-00359-CCA-R9-CD, 2005 WL 735080, at *1 (Tenn. Crim. App., at Knoxville, Mar. 30, 2005) *perm. app. denied* (Tenn. Aug. 22, 2005), *abrogated by State v. Pickett*, 211 S.W.3d 696 (Tenn. Jan. 22, 2007).

After the charges were filed, Defendant filed a motion for discovery, which included a request that the State provide him with copies of the computer hard drive and other computer materials. The State refused Defendant's discovery request but offered instead to make Defendant's computer hard drive available for inspection at the Sheriff's Department. Thereafter, Defendant filed a motion to compel discovery. At a hearing on his motion to compel, Defendant's computer expert testified that simply being allowed access to Defendant's computer hard drive at the Sheriff's Department would not permit him to conduct a sufficient evaluation. The defense expert's testimony was summarized in this court's opinion as follows:

> In [Defendant's] case, a hearing on his motion to compel was held at which the State presented one witness, Carlton Bryant, an attorney employed at the Knox County Sheriff's Department. Bryant testified that his understanding of the law was that the sheriff's department could not allow counsel to take a copy of the computer hard drive from the department because the sexual exploitation statute did not contain any exemption for defense counsel to be given child pornography. He said they would, however, accommodate counsel and counsel's computer experts by mirror-imaging the hard drive and allowing them to examine the copy while it remained in the "custody and control" of the department. He testified that they contemplated setting aside a conference room for that purpose and would arrange a schedule that was convenient for counsel and his experts.
>
> Herbert Mack, [Defendant's] expert computer witness, described in detail the various programs and viruses by which material can be both deliberately and

inadvertently downloaded into a computer and estimated that it would take him approximately one week of intensive twelve-to fourteen-hour days to complete an examination of [Defendant's] computer hard drive. He testified he would probably require the assistance of support personnel from his office and, in addition, would need to consult regularly with counsel with respect to whether any sexually explicit files he found on the computer qualified as child pornography. He said that, given the large number of images allegedly contained on the computer, he would not be able to remember the specifics of the information without taking the computer hard drive from the sheriff's department.

Mack expressed concern about working from a "mirror image" rather than the hard drive itself, testifying that the computer programs in existence did not create true mirror images:

A. Well, the question-what I heard before was providing me with a mirror image. Okay. If we're talking about me working on the original computer, no, I don't need another computer as long as I can, you know, load my tools and take my tools off. If what you're going to give me is a mirror image, my concern there is that I'm not getting all of the data that's there.

Q. And why is that? If it's a mirror image wouldn't you just get everything that's in the mirror?

A. No, sir.

Q. Why not?

A. A mirror image is a misnomer, okay. The computer programs that you have right now, okay, are for the purpose of recovering good data. Okay. So if a file has been ordered damaged or erased it's not going to be on the image.

Mack conceded that his examination of the actual hard drive would entail reconnecting the original personal computer equipment, turning the computer on, and loading his software file-searching tools, and he agreed that in the process of booting up the Windows operating system the contents of the hard drive would be changed. However, according to his testimony, booting the computer would not alter either the file creation date or last accessed date of the images in question. Mack testified he was familiar with "EnCase," a forensic examination software utility available exclusively to law enforcement, but he was not aware that it had been approved by several federal district and appellate courts as a "non-invasive forensic examination tool."

*Id*. at *2-3.

In addition to the testimony above, Mack further testified that the risk of transmitting inaccurate information was high if defense counsel was dependent upon Mack to tell defense counsel what he had seen on a computer disk image. Mack stated that there was an increased risk of disclosing non-discoverable information because the State's expert would be able to determine what tools had been run on Defendant's computer hard drive and what information had been recovered before Defendant was obligated to disclose its expert report. Mack also stated that Defendant would have no choice but to involuntarily disclose information that was not subject to discovery and that Defendant did not intend to use at trial.

At the conclusion of the hearing on the motion to compel, the trial court issued a protective order requiring disclosure of a mirror image of the computer hard drive. However, the State refused to comply. Defendant filed a "Renewed Motion to Suppress" as a result of the State's noncompliance with the court's order. In response, the trial court issued a second protective order requiring disclosure of the discovery materials to Defendant.

After the issuance of the second protective order by the trial court, the State filed an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. The State argued that compliance with the discovery request violated Tennessee sexual exploitation statutes. At the conclusion of the interlocutory appeal, this court found that the trial court did not err in ordering the State to comply with Defendant's discovery request.

> [We] conclude that the possession, copying, or distribution of child pornographic materials does not constitute a violation of Tennessee's sexual exploitation of a minor statutes so long as it occurs in the context of the prosecution or defense of a case under the statute. . . . [T]he trial court[ ] entered protective orders to keep the evidence secure and to confine its dissemination to defense counsel and counsel's agents and employees in the preparation of their defense. We find these orders reasonable and appropriate, especially given [Defendant's] computer expert's testimony with respect to the extensive and exhaustive work entailed in his examination of [Defendant's] computer hard drive. Accordingly, we conclude that the trial courts did not err in granting Defendant['s] motion to compel the production of the evidence.

*Richard Allen Butler,* 2005 WL 735080, at *11. This Court affirmed the trial court's issuance of the two previous protective orders. However, the State continued to deny Defendant's discovery request. Thereafter, Defendant filed a "Second Renewed Motion to Suppress," again requesting suppression of the evidence. The State filed a response to Defendant's motion and argued that enactment of an amendment to federal law, known as the "Adam Walsh Child Protection and Safety Act" ("the Adam Walsh Act"), now prevented the State from granting Defendant's discovery request to provide copied images of the alleged child pornography taken from Defendant's computer. The trial court entered a third protective order, which again instructed the State to provide copies of the discovery material requested by the defense. In its order, the court stated:

> In its March 30, 2005 decision, the Court of Criminal Appeals clearly contemplated the State's proposal of mirror-imaging Defendant's hard drive and allowing counsel

4

to examine the copy while it remained in the "custody and control" of the Sheriff's Department. *State v. Butler*, No. E2004-00359-CCA-R9-CD, 2005 Tenn. Crim. App. LEXIS 302, at *6 (Tenn. Crim. App. Mar. 30, 2005). The Court also considered the State's argument that the sexual exploitation statute provides no exception allowing possession of such material by defense counsel or experts. *Id.* at *26. Despite taking these arguments under advisement, the court held "that the possession, copying, or distribution of child pornographic materials does not constitute a violation of Tennessee's exploitation of a minor statutes so long as it occurs in the context of the prosecution or *defense* of a case under the statute." *Id.* at *33 (emphasis added). The Court clearly stated that both the *Allen* and *Butler* Trial Courts' Protective Orders were "reasonable and appropriate" under Tenn. R. Crim. P. 16(a)(1)(C). *Id.* In upholding the *Butler* and *Allen* Orders, the Court specifically relied upon computer expert testimony detailing the extensive and exhausting work involved in examining a computer hard drive. *Id.*

The state has continued to refuse to provide [Defendant] with an independent examination of the evidence against him. The State has persisted in allowing [Defendant] access to his hard drive and other evidence only while it is under the "custody and control" of the Sheriff's Department, despite the fact that the Criminal Court of Appeals found this Court's . . . Order to be reasonable and appropriate. *Butler*, No. E2004-00359-CCA-R9-CD, 2005 Tenn. Crim. App. LEXIS 302, at *33.

In response to the issuance of the trial court's third protective order mandating disclosure of discovery, the State filed a "Motion to Reconsider and/or Motion to Clarify the Court's Protective Order." In this motion, the State argued that the enactment of the Adam Walsh Act "unequivocally bann[ed]" the distribution or dissemination of child pornography to defense counsel during litigation, thereby reversing the appellate court's ruling in *Butler* on the basis that the Adam Walsh Act, under the doctrine of federal preemption, superseded Tennessee criminal procedural rules governing discovery. Defendant filed a memorandum in response to the State's motion. In Defendant's response memorandum, Defendant detailed cases in other jurisdictions which held that the Adam Walsh Act did not preempt those States' discovery rules.

A hearing was held on the State's motion to reconsider. At the hearing, the State informed the court that it had contacted the U.S. Attorney's office, as it believed it was obligated to do, and disclosed that a copy of the mirror image of the computer hard drive would be provided to defense counsel and their experts. The State informed the court that defense counsel, any defense expert, as well as court staff and others could be at risk of federal prosecution for possession of child pornography in violation of the Adam Walsh Act if the discovery material was turned over to Defendant. At the hearing, the following exchange occurred between the trial court and the State:

> [Prosecutor]: I'm here and ready, Judge. I can't make any promises about what would happen in - I mean there's dual jurisdiction in child pornography cases. They know that.

5

| | |
|---|---|
| The Court: | What happens if my court reporter takes it? Is she subject to federal prosecution? Is the court clerk and Miss Phillips subject to federal prosecution? |
| [Prosecutor]: | Judge, I have absolute immunity in my prosecutorial functions. This is a prosecutorial function. I don't know about anybody else. |
| The Court: | Well, there's another alternative. And that is because I have ordered this be turned over at least three times and the appellate court has too, I can suppress the evidence and you can appeal that to the appellate court and see if we can't get the appellate court to tell us how they'd like to approach these cases because the State of Tennessee is going to have to do something. |
| | . . . . |
| [Prosecutor]: | I'm here and ready to comply with the order, Judge, the initial order where you'd have me turn it over. We appealed that to the Court of Appeals and it came back down. |
| The Court: | Yes, and they told you to turn it over, and I told you to turn it over. |
| [Prosecutor]: | You re-ordered me, and then I filed a Motion to Reconsider based on the Adam Walsh case, and you haven't ruled on the Adam Walsh case yet. Today is the day that you rule on Adam Walsh - |
| | . . . . |
| The Court: | Did you notify the U.S. Attorneys? |
| [Prosecutor]: | Yes, I did. |
| The Court: | Then - then I want the disc lodged with the court reporter to be sealed and filed under seal. I hereby suppress the evidence in this case, and the State is free to appeal the suppression of evidence. I hereby suppress the evidence that's on the disc; let's put it like that. I don't know what other evidence the State wants to offer . . . . |
| | . . . . |

6

| | |
|---|---|
| The Court: | Well, I'm suppressing the evidence based upon what Mr. Bell just said, that they cannot - they're totally chilled from being able to evaluate their own - evaluate the evidence against them. |
| [Prosecutor]: | So you're suppressing it because I notified the U.S. Attorney that they were taking possession - |
| The Court: | No. I'm suppressing it because they can't get it under federal law because - you know, that's up to you whether you notified the U.S. Attorney because I think you - there are certain things you have to do under the law as well. But I don't see how you can proceed with a prosecution with regard to this, turn that over to them, and not - and them not be able to do what they need to do, which was what the whole issue was about.

The disc had to be a mirror image because any manipulation of the computer disc changes the evidence, and that was the whole point. And they need to have their expert evaluate it. So how can they do that? They can't not without violating the law.

And as attorneys, they're standing up and saying to me, as officers of the court, they don't wish to violate the law, and I respect that.

So I'm going to suppress the evidence as a result of that disc, but I'm locking it up so that we have that disc. And I think you ought to consult with whoever you consult with to deal with the suppression issues -

. . . . |
| [Prosecutor]: | The contents of that hard drive are - contain all of the counts in the indictment. So if you're suppressing . . . the actual child pornography that's contained thereon, then you're in effect - |
| The Court: | In effect, dismissing - |
| [Prosecutor]: | - dismissing - |
| The Court: | - the case. |

7

|  |  |
|---|---|
| | . . . . |
| The Court: | If you'd like me to go ahead - |
| [Prosecutor]: | - so that we could - |
| The Court: | - and do an outright dismissal, then I dismiss it. |
| [Prosecutor]: | Yes. So that we could Rule 3 it. |
| The Court: | It's hereby dismissed. |

After the trial court suppressed the evidence and dismissed the case against Defendant, the state filed a timely notice of appeal.

## II. ANALYSIS

*Risk of Federal Prosecution*

As noted, the State argued in the trial court that Section 3509(m) of Title 18 of the United States Code, part of the Adam Walsh Act, effectively preempts discovery in child pornography cases and that conducting discovery in violation of the act could subject defense counsel to federal prosecution for possession of child pornography. 18 U.S.C. § 3509(m) provides:

> (1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.
>
> (2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by Defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of the title), so long as the Government makes the property or material reasonably available to Defendant.
>
> (B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to Defendant if the Government provides ample opportunity for inspection, viewing and examination at a Government facility of the property or material by Defendant, his or her attorney, and any individual Defendant may seek to qualify to furnish expert testimony at trial.

The question we must initially address is whether this statute preempts our own state rules regarding discovery in state prosecutions for crimes involving child pornography. This is a question of first impression in this state.

"The police powers of a state are not to be preempted by federal legislation unless that [is] Congress's clear and manifest purpose." *State v. Scott*, 678 S.W.2d 50, 51 (Tenn. 1984). Congress's intent to preempt state laws must either be expressly stated in a federal statute or be implicit in the statute's structure and purpose. *Id.*

It can readily be seen that Section 3509(m) does not explicitly refer to state prosecutions. The law references Fed. R. Crim. P. 16 in superseding that rule's discovery procedures. The statute also refers to the prosecution as the "Government," a term typically used in federal statutes to denote the government of the United States not the government of a state. Finally, the statute is part of Part II of Title 18 of the United States Code which is dedicated to "Criminal Procedure." In the case of *State ex rel. Tuller v. Crawford*, 211 S.W.3d 676 (Mo. Ct. App. 2000), the Missouri Court of Appeals relied on these factors in concluding that Section 3509(m) is a procedural provision applicable only to federal courts. *Id.* at 679. We agree with the reasoning of *Crawford* and hold that Section 3509(m) does not apply to proceedings in Tennessee state courts. Further, the statues does not criminalize any conduct that was not already illegal under Sections 2251, 2252 and 2252(A) of Title 18 of the United States Code long before the passage of Section 3509.

We have been unable to find a single state or federal criminal prosecution of defense counsel anywhere in the country based on counsel's possession of child pornography as part of a state's discovery procedures. We think the likelihood of federal prosecution of defense counsel in this case for possession of child pornography is remote at best and did not justify the suppression of evidence and dismissal of the prosecution of Defendant.

Moreover, even if Section 3509 were applicable to state proceedings, the statute has been interpreted to allow disclosure of offending materials where a defendant has shown that an analysis of the material at a government facility would be cost prohibitive; doubt about the reliability of an expert's equipment would be raised if the expert were forced to move the equipment; or that the expert's ability to analyze the material is so compromised that he is of no effective service to Defendant or Defendant's attorney. *See United States v. Knellinger*, 471 F.Supp. 2d 640, 647-48 (E.D.Va. 2007). In *Richard Allen Butler* the trial court and this Court found that forcing the defense expert to conduct the "extensive and exhaustive work" entailed in examining Defendant's computer hard drive in a law enforcement facility would compromise significantly the expert's usefulness to the defense. 2005 WL 735080, at *11. Consequently, we held the trial court's orders compelling production of evidence along with protective orders to restrict the dissemination of the offending material solely in the preparation of the defense were reasonable and proper. *Id.* We believe this case is analogous to *Knellinger* and that even if Section 3509 were applicable to this prosecution the difficulties of discovery only in a law enforcement facility and the compromise to the effectiveness of the defense expert justify the orders of production in this case as well as the protective orders.

Therefore, we hold that the trial court erred in dismissing this case out of fear that defense counsel would be subject to a federal prosecution under §3509.

*Dismissal for Failure to Comply with Tennessee Rule of Criminal Procedure 16*

Tennessee Rule of Criminal Procedure 16 governs most discovery issues in Tennessee criminal cases. The record in this case also reflects that the trial court was to some extent concerned about the prosecution's obstinate refusal to comply with the orders of both the trial court and this Court regarding discovery in this case. The dismissal of the indictment could be interpreted as punishment for the prosecution's pertinaciousness in the failing to follow the discovery orders. Although under certain circumstances exclusion of evidence and dismissal of a criminal prosecution is proper under Tennessee Rule of Criminal Procedure 16 for failure of the State to comply with discovery orders, that power should be used sparingly and only when necessary to avoid irremediable prejudice to Defendant from discovery violations. *See State v. Garland*, 617 S.W.2d 176, 185 (Tenn. Crim. App. 1981). In light of the prosecution statements at the hearing in the trial court on this matter and the assurance of the attorney for the State at the appellate oral argument that the prosecution is now ready to comply with the discovery orders of this Court and trial court, we hold that exclusion of the computer images in question and dismissal of the prosecution were erroneous. If the prosecution is now willing to comply, the potential prejudice to Defendant is not irremediable.

We understand the frustration of the trial court over the persistent refusal of the prosecution to comply with court orders. However, exclusion of the evidence in question and dismissal of the indictment was not the proper method to punish the prosecution once a willingness even grudgingly expressed was made to at last comply with the discovery orders. Any further refusal to comply with the orders of the trial court should be punished with the court's contempt powers. *Garland*, 617 S.W.2d at 185.

CONCLUSION

In light of the foregoing the judgment of the trial court is reversed, the indictment is reinstated and the case is remanded for trial.

_____
JERRY L. SMITH, JUDGE

10