# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 3, 2003

## STATE OF TENNESSEE v. JAMIE JOHN SCHRANTZ

**Appeal from the Circuit Court for Madison County**
**No. 01-708     Roy B. Morgan, Jr., Judge**

---

**No. W2002-01507-CCA-R3-CD  - Filed December 2, 2003**

---

The defendant, Jamie John Schrantz, appeals from his Madison County Circuit Court jury conviction of assault. He claims that the evidence is insufficient to support the conviction, that the trial court erred in limiting the defendant's cross-examination of a prosecution witness, and that the trial court erred in ordering the assault sentence served consecutively to prior sentences. We affirm the lower court's judgment.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Michael D. Rasnake, Jackson, Tennessee, for the Appellant, Jamie John Schrantz.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The assault conviction emanates from an incident at the Fast Lane gas station in Jackson on April 1, 2001. The defendant accompanied the victim, Diana Todd, into the store. The defendant and the victim had been involved in a relationship, but in the hours preceding the events at the Fast Lane, they had argued about the defendant staying out until the wee hours on April l with the victim's sister.[1]

In the Fast Lane store, the couple argued over how many packs of cigarettes the victim should buy, and the victim left the store with the defendant following behind her.

---

[1] The parties testified at the trial on May 23, 2002, that they were then engaged to be married.

The victim, who was called as a witness by the state, testified that after leaving the store, she got behind the wheel of her sport utility vehicle and locked the doors. The defendant testified that he panicked when he found the passenger side door locked. He went to the rear of the vehicle and opened the unlocked hatch door. Then, by all accounts, the six-foot-seven-inch, 293-pound defendant climbed through the rear of the vehicle and over the rear seat. The victim and the defendant both testified that the defendant tried to get the keys from the vehicle switch and that the victim struck him several times in the face with her wallet "to get his attention." They both denied that the defendant struck the victim.

The victim left the vehicle, went in to the store, and asked the store clerk to call 911. The victim and the defendant testified that when the victim went to the store, the defendant occupied the driver's seat of the vehicle and refused to budge when the victim returned and tried to pull him out. The victim and the defendant testified that the defendant did not strike the victim at any time during the episode at the Fast Lane. The victim testified that she was not fearful of the defendant, characterizing him as "a big teddy bear" who would not harm her.

The victim denied that she told investigating Jackson Police Officer Mark Ellington that the defendant had hit her. When she learned the day after the incident that the defendant had been incarcerated, she reviewed the incident report, which stated that the defendant had assaulted the victim. She called Officer Ellington and told him the report was inaccurate and that the defendant had not struck her.

The Fast Lane clerk testified that after the argument inside the store, the victim left, an angry defendant followed her, and the victim got into her vehicle. The clerk saw the defendant climb through the hatch door and testified that the defendant began hitting the victim with open hands and fists on the head and in the face. The clerk testified, "He just kept hitting her and hitting her." The victim then came back into the store in an agitated state and asked the clerk to call 911, which the clerk did. The clerk testified that the victim returned to the vehicle and that the defendant and the victim engaged in "constant fighting" while standing outside the vehicle. She described the victim's efforts as defensive.

A customer of the Fast Lane testified that he was pumping gas when he saw the defendant enter the victim's vehicle through the rear hatch. The customer, who was an off-duty deputy sheriff in another county, testified that the defendant began hitting the victim. He testified that when he went into the store to pay for his gas, the clerk screamed, "He's beating her!" The customer told the clerk to call 911 before the victim came to the door to make the same request.

The Jackson officers who investigated the incident testified that they found the victim in an upset, hysterical, and "flushed" condition. They testified that she told them that the defendant had hit her. The defendant was arrested and transported to the jail.

In his testimony at trial, the defendant acknowledged being upset and emotional over the prospect of the couple breaking up and that he raised his voice during the argument over the

cigarettes. He denied that he was angry. He panicked when he found the vehicle door locked because he thought the victim was going to drive away and leave him. He entered the vehicle through the hatch and tried to get the keys. He denied that he ever struck the victim. He admitted that he had sixteen prior felony convictions for thefts, forgeries, and bad check charges. He also admitted that he was on parole on April 1, 2001, and that as a result of the incident on that date, his parole had been revoked.

I

In his first issue, the defendant assails the sufficiency of the convicting evidence. When the sufficiency of the evidence is challenged on appeal, the appellate court must view the evidence in the light most favorable to the state, indulge the state the benefit of all inferences that may reasonably be drawn from the evidence, and determine whether any reasonable person could find the accused guilty beyond a reasonable doubt, after deferring to the trier of fact to weigh the evidence, resolve factual disputes, and judge the credibility of witnesses. Tenn. R. Crim. P. 13(e); *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002).

In the present case, the defendant was convicted of assault via Tennessee Code Annotated section 39-13-101(a), an offense committed by one who intentionally, knowingly or recklessly causes bodily injury to another *or* who intentionally or knowingly causes another to reasonably fear imminent bodily injury. Tenn. Code Ann. § 39-13-101(a)(1), (2) (2003).

The defendant claims on appeal that the state failed to prove that the victim sustained any bodily injury, leaving the offense alternative of reasonable fear of imminent bodily injury as the only other basis for conviction.[2] As to this basis, the defendant argues that the victim vehemently denied being fearful of any bodily injury and that only the victim could establish whether she was afraid. The state counters that it circumstantially established the victim's fear of bodily injury through witnesses who variously described her as being "hysterical," "scared," "pretty upset," "crying," "shaking," "flushed," and "frantic."

The defendant's argument is intriguing, but it runs headlong into the general rule that "criminal offense[s] may be established exclusively by circumstantial evidence." *State v. Pendergrass*, 13 S.W.3d 389, 393 (Tenn. Crim. App. 1999); *see also Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973); *State v. Jones*, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995).

In *State v. Tommy Arwood, Jr.*, No. 01C01-9505-CC-00159 (Tenn. Crim. App., Nashville, May 24, 1996), this court reviewed the sufficiency of the evidence in an assault case. The victim, a store employee who suspected the defendant of shoplifting cigarettes, followed the

---

[2] The assault offense was charged in the alternative in one count. Tennessee Code Annotated section 40-13-206 (a) arguably supports this practice. *See* Tenn. Code Ann. § 40-13-206(a) (2003) ("When the offense may be committed by different forms, by different means or with different intents, such forms, means or intents may be alleged in the same count in the alternative."). In our view, however, the better practice is to allege alternative modes of assault in separate counts.

defendant and confronted him. After the defendant threatened to fight the victim, the defendant "shoved [the victim] with both hands backwards into the ice machine." *Id.*, slip op. at 3. After the defendant left, the victim swore out an assault warrant against the defendant. Although the victim did not "specifically [testify] that the defendant's words and actions caused him to fear imminent bodily injury," this court held that "there was sufficient circumstantial evidence for the jury to conclude beyond a reasonable doubt that [the victim] had experienced such fear as a result of the defendant's conduct." *Id.*, slip op. at 6. The circumstances relied upon by the court in *Tommy Arwood, Jr.* were that the victim hit the defendant with an empty soda bottle as a gesture of self-defense, the victim was unable to recite the defendant's license number following the attack, and the victim responded to the attack by calling the police. *Id.* (concerns about self-defense, inability to concentrate, and turning to the police for help are indicia of fearfulness).

In *State v. Ricky Atkins*, No. 03C01-9812-CC-00432 (Tenn. Crim. App., Knoxville, Nov. 10, 1999), this court reviewed an assault that emanated from yet another convenience store cigarette incident. Atkins fled a store with stolen cigarettes, and the store clerk followed. "[T]he defendant turned to face the victim, displayed a weapon, and threatened [the victim's] life" while standing approximately ten feet from the victim. *Id.*, slip op. at 6. The victim retreated to the store and called 911. *Id.* Even though the victim did not specifically testify that he was fearful, this court held that "[u]nder the circumstances, the jury was entitled to infer that the victim 'reasonably fear[ed] imminent bodily injury' as required by the [assault] statute." *Id.*

These two cases not only establish that a victim's fear of imminent bodily injury may be inferred from circumstantial evidence, but they also point to circumstances that suggest the victim experienced fear. Although *Ricky Atkins* is somewhat attenuated as guidance in the present case because the circumstances involved Atkins' wielding a weapon, that case, along with *Tommy Arwood, Jr.*, mention the victims' respectively turning to the police for help following the assaults. In *Tommy Arwood, Jr.*, the court emphasized the victim's attempts at self-defense as suggestive of a person's fear of personal injury. Both these factors apply in the present case. Witnesses observed Ms. Todd striking at the defendant defensively, and it is undisputed that the victim came into the store to ask the clerk to call 911. In addition, the victim entered her vehicle and locked the doors when she left the store following the argument. Most significantly, witnesses observed the defendant, a large man, striking the victim both inside and outside the vehicle The customer testified that the store clerk screamed, "He's beating her!" Following the altercation, various witnesses, without objection, described the victim as "frantic," "crying," "hysterical," and "scared."

We conclude that given the circumstances in the present case and based upon the legal authority of *Tommy Arwood, Jr.* and *Ricky Atkins*, the evidence was sufficient to justify the jury in inferring that the victim reasonably feared imminent bodily injury. Furthermore, the evidence supports a finding of all of the elements of assault via intentionally or knowingly putting the victim in reasonable fear of imminent bodily injury.

## II

In his next issue, the defendant claims that the trial court erred when it disallowed him to cross-examine a prosecution witness, Officer Ellington, about receiving a one-day suspension without pay in connection with the officer failing to detect the defendant's possession of cigarettes during his search of the defendant incidental to arrest on the night of April 1, 2001. In a jury-out hearing, Ms. Todd testified that, when she confronted Officer Ellington about what she viewed as an inaccurate incident report, he responded that the defendant was the one who "cost [him] a day off without pay." Ms. Todd then posited that the report was in retaliation for Officer Ellington receiving a suspension. The court ruled that evidence of Officer Ellington's one-day suspension was irrelevant to the issue whether the incident report was retaliatory because Ellington did not prepare the report and that the defendant could not cross-examine Officer Ellington about the day off without pay. Later, Officer Ellington testified before the jury that he was the first officer to arrive at the Fast Lane on April 1, 2001, but that he was not the one who authored the incident report. On cross-examination, he testified that he had no problems with the defendant.

On appeal, the defendant argues that the evidence was relevant to show Officer Ellington's prejudice against the defendant. The defendant claims that impeachment of the witness through a showing of prejudice was critical to the defense and should have been allowed pursuant to Tennessee Rule of Evidence 616 and his due process rights to a fair trial. *See* Tenn. R. Evid. 616 ("A party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness."); *State v Brown*, 29 S.W.3d 427, 435 (Tenn. 2000) (constitutional right to present a defense may be violated by exclusion of hearsay testimony).

In our view, this issue has been waived. The issue of the impeachment of Officer Ellington through prejudice was first raised pretrial by the state's oral motion *in limine*. The state asked the trial court to disallow cross-examination of Officer Ellington concerning his one-day suspension; the state posited that the suspension could not have resulted in prejudice *in preparing the incident report* because Officer Freeman, not Officer Ellington, prepared the report. On the other hand, in the pretrial hearing on the issue, the defendant argued that Officer Ellington's suspension was an issue of prejudice insofar as Ellington's *trial testimony* was concerned. The trial court discerned the distinction between the two positions and deferred a ruling until the point in the trial when the defendant wished to present the evidence. That point came during the cross-examination of Ms. Todd, who was the person to whom Officer Ellington admitted that he had been suspended on the defendant's account. Ms. Todd testified in the jury-out hearing that Officer Ellington's reference to the suspension and his refusal to modify the report caused her to believe that the report was the result of Officer Ellington's prejudice. The state then revisited its earlier argument that the claim of prejudice related to the preparation of the report, and both the trial court and the defendant responded in the same vein. When the trial judge announced following the jury-out hearing that the defendant could not cross-examine Officer Ellington about the suspension because he had not been the author of the report, the defendant took no issue with the court's rationale and did not pursue an argument that Ellington's anticipated *trial testimony* was the result of prejudice and should be

allowed via Rule 616. When Officer Ellington later testified, the defendant neither attempted a Rule 616 cross-examination nor sought a further ruling from the trial court.

In our view, the tacit basis for objecting and the trial court's rationale for overruling the objection are at odds with the Rule 616 and due process issues the defendant raised in his motion for new trial and in his appellate brief. The aggrieved party on appeal may not obtain relief in contravention of the province of the trier of fact. Tenn. R. App. P. 36 (a). In other words, the aggrieved party may not, on appeal, rely upon a different theory for the admission of evidence than that asserted in the trial court. *See e.g., State v. Garland*, 617 S.W.2d 176, 186 (Tenn. Crim. App. 1981). We believe that the defendant runs afoul of this rule and conclude that the issue as framed on appeal is waived.

### III

In his final issue, the defendant claims that the trial court erred in imposing the eleven-month-twenty-nine-day sentence in the present case to run consecutively with his sentences in a large number of convictions imposed by courts in four counties. The record before us shows that the defendant was convicted on various charges of forgery and violating the bad check law in Madison, Henderson, Crockett, and Perry Counties. The most recent adjudications occurred in September 1998, when he received, in addition to several misdemeanor convictions, a felony theft conviction in Henderson County and felony theft and forgery convictions in Madison County. On that date, he received sentences of up to two years for various convictions in both Henderson and Madison Counties. He was apparently on parole on April 1, 2001, when the instant offenses were committed.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. *See* Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Although consecutive sentencing is not *mandated* by the terms of Tennessee Code Annotated section 40-35-115(b) or by Tennessee Rule of Criminal Procedure 32(c)(3), the consecutive sentencing order in this case is amply supported by the permissive provisions of Code section 40-35-115(b)(2), which authorizes the trial court to utilize consecutive sentencing when the offender has an "extensive" record of criminal activity. Tenn. Code Ann. § 40-35-115 (b)(2) (2003). No word describes the defendant's record of criminal activity better than "extensive." Accordingly, the trial court was justified in imposing the instant sentence to run consecutively to the previous sentences.

IV

In conclusion, we find no reversible error and affirm the judgment of the lower court.


_____
JAMES CURWOOD WITT, JR., JUDGE