FILED
05/16/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 11, 2025

**STATE OF TENNESSEE v. JEFFERY LYNN SANDERS**

**Appeal from the Criminal Court for DeKalb County**
**No. 2020-CR-214        Wesley Thomas Bray, Judge**

_____

**No. M2024-00536-CCA-R3-CD**

_____

The Defendant, Jeffery Lynn Sanders, appeals from the trial court's revocation of his probation.  On appeal, he alleges that (1) various procedural errors attended his revocation hearing, (2) no substantial evidence existed to support the finding of a violation of probation, and (3) the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement.[1]  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed;**
**Case Remanded**

KYLE A. HIXSON, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JOHN W. CAMPBELL, SR., J., joined.

Craig P. Fickling, District Public Defender; and Allison R. West, Assistant District Public Defender, for the appellant, Jeffery Lynn Sanders.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and J. Greg Strong, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.        FACTUAL AND PROCEDURAL HISTORY**

The Defendant was placed on probation on December 6, 2022, following his November 14, 2022 guilty plea to theft and vandalism, both Class E felonies.  *See* Tenn.

---

[1] To provide clarity, the court has reframed the issues presented by the Petitioner.

Code Ann. §§ 39-14-103, -408.  The offenses were committed in October 2020.  He was sentenced to serve two years on each of these convictions, aligned consecutively.  However, due to the sentencing court's application of his accumulated pre-trial jail credit, the Defendant was placed on probation for one year and two months for the theft offense, followed by an additional two years of probation for the vandalism offense.

A violation of probation warrant was issued on February 7, 2024, alleging that the Defendant had violated the rules of his probation by possessing unlawful drug paraphernalia and "illegal substances" with the intent to sell, deliver, or manufacture on January 30, 3024.  On March 12, 2024, the Defendant had a heated exchange with the sentencing court regarding its choice of appointed counsel for the Defendant in these revocation proceedings,[2] and after the Defendant demanded that the sentencing court "set [his] case," the Defendant was removed from the courtroom.  On March 20, 2024, the Defendant filed two pro se pleadings requesting, *inter alia*, that the sentencing court be removed from further participation in his case.  On April 1, 2024, a different criminal court judge from the Thirteenth Judicial District, hereinafter referred to as the trial court, held a revocation hearing on the Defendant's violation of probation warrant.

At the outset of the revocation hearing, defense counsel informed the trial court that the Defendant wished to subpoena his probation officer and two individuals who were "present when the facts that form[ed] the basis of the underlying charge occurred."  The State responded that this request was a delay tactic because it expected the proof to show that all of the illicit items were found on the Defendant's person and, therefore, anything these witnesses had to say would not matter. After a brief discussion between defense counsel and the trial court, the trial court stated that the hearing would proceed, denying any implicit request for a continuance.

The State called Corporal Nathan Armour with the DeKalb County Sheriff's Department to testify regarding the Defendant's arrest on January 30, 2024.  Corporal Armour stated that while he was already in the general area on an unrelated patrol matter, he heard a call for service indicating that the Defendant was trespassing at a local business.  He was familiar with the Defendant from previous interactions and observed him in the backseat of a nearby vehicle, which was displaying a tag that was not registered to that

---

[2] During this exchange, the Defendant noted that nearly "every attorney in this town" had a conflict of interest with regard to representing him.  At the time of this exchange, the Defendant's counsel was permitted to withdraw, but this was at the Defendant's request.  The trial court then appointed successor counsel, *in absentia*, who later filed an agreed order substituting counsel due to his own potential conflict of interest.  In that order, the District Public Defender's Office was appointed to represent the Defendant and remained counsel of record through the revocation hearing and on appeal.

vehicle. Corporal Armour approached the Defendant and had him step out of the vehicle. He noted that the Defendant seemed to be under the influence of some substance because the Defendant "was real[ly] fidgety, [had] uncontrollable movements, [and] kept walking away." These behaviors were so pervasive that Corporal Armour repeatedly had to instruct the Defendant to return to the area.

Corporal Armour was aware that the Defendant was on probation, and he obtained the Defendant's consent to perform a pat down search. Prior to doing so, in response to the officer's question about whether he had anything sharp on his person, the Defendant revealed the locations of a knife, a hypodermic needle, and six additional needles within his clothing. During the search, Corporal Armour also found two cut straws, one "that had a crystal like substance or residue" inside, and a spoon with "burnt residue" on it, all of which he noted was consistent with illicit drug use. Additionally, in the Defendant's wallet, Corporal Armour found a "powdery substance," which the Defendant told him was heroin, and the Defendant further disclosed that he had used heroin earlier that same day. Although the officer testified that he had weighed the substance at the scene, he did not recall the exact weight at the time of the hearing. However, Corporal Armour testified that, although the paraphernalia found on the Defendant was consistent with personal use, the weight of the substance at the time of its discovery was what prompted him to charge the Defendant with possession of Schedule I controlled substance with the intent to sell, deliver, or manufacture. At the time of the hearing, these offenses were still pending, and the identity of the substance had not yet been confirmed by laboratory analysis. No other proof was introduced at the hearing.

In making its ruling on the revocation, the trial court noted its responsibility to first determine whether the Defendant had violated the terms of his probation and, if so, what consequence to impose. The trial court accredited the testimony of Corporal Armour and specifically found that the Defendant was in possession of heroin as well as unlawful drug paraphernalia, which it then expressly identified as including the spoon and the straws as well as the needles. Based on this, the trial court found that the Defendant had violated his probation. Regarding the consequence to be imposed, the trial court stated

> [The Defendant has] a new felony charge for possession for resale of Schedule I and paraphernalia. If [the Defendant] just had paraphernalia, the court would be very concerned. But . . . [the Defendant had just about] everything [he] could possibly want to administer heroin[] to [himself] or others if [he] wanted to.

After a brief discussion with defense counsel regarding the original consecutive sentencing alignment of the Defendant's two-year sentences, as well as the Defendant's substantial amount of earned jail credit, the trial court noted that one of the Defendant's sentences was at least "almost served" at the time of the hearing. After noting that "obviously probation is not [the Defendant's] thing," the trial court revoked the Defendant's probation in full and ordered the remainder of the Defendant's effective four-year sentence to be served in custody with credit for "whatever time that he's served." The trial court then expressly stated again that the Defendant would get credit for any time previously served, noting that this would be applied "on the first two, then he'll have his other two . . . to serve." However, the revocation order ultimately signed by the trial court on April 4, 2024, revoked only the Defendant's two-year sentence for theft and awarded post-judgment jail credit.

The Defendant filed a timely notice of appeal.

## II.     ANALYSIS

On appeal, the Defendant contends that the trial court erred in finding that he violated his probation, based on (1) holding a revocation hearing when it was not the sentencing judge; (2) providing insufficient notice of the hearing that curtailed the Defendant's opportunity to subpoena witnesses; (3) denying a continuance to allow the Defendant to subpoena witnesses for his defense, or, in the alternative, to allow for the disposition of the underlying charges; (4) a lack of substantial evidence that the Defendant committed the underlying offenses; and (5) an alleged violation of the Defendant's constitutional right not to be imprisoned without being found guilty by a jury of his peers. Additionally, the Defendant contends that the trial court abused its discretion by imposing incarceration as the consequence for this first violation and that the continuance to subpoena additional witnesses would have served to provide testimony to support the imposition of an alternative consequence for the violation. The State responds that the Defendant has waived his complaint regarding notice for failure to raise it in the trial court, and he has waived his claim regarding the continuance for inadequate briefing. The State further asserts that the remainder of the Defendant's allegations are meritless, unsupported by applicable law and that he failed to make proper argument in support of them on appeal.

### A.     Waived Procedural Claims

At the outset, we note that this court had difficulty deciphering the issues the Defendant intended to raise on appeal. In large part, this is because the Defendant's brief does not substantially conform to the requirements of the Tennessee Rules of Appellate Procedure. *See* Tenn. R. App. P. 27(a). We will exercise our discretion and not order the

- 4 -

brief stricken and require the filing of a new brief. *See* Tenn. Ct. Crim. App. R. 10(a); *e.g.*, *State v. Lee*, No. W2022-00626-CCA-R3-CD, 2023 WL 1956964, at *12 (Tenn. Crim App. Feb. 13, 2023) (concluding same), *perm. app. denied* (Tenn. June 7, 2023). We will, however, treat issues which are not properly designated as issues or supported by argument, citation to authorities, or appropriate references to the record as waived. *See* Tenn. R. App. P. 27(a)(7) (noting that an appellant's brief must contain an argument setting forth contentions with respect to the issues, the reasons requiring relief, and including citations to applicable authority, references to the record, and the applicable standard of review); Tenn. Ct. Crim. App. R. 10(b); *e.g.*, *Lee*, 2023 WL 1956964, at *12.

The Defendant's contention that the trial court's denial of his request for a continuance prevented him from procuring witnesses in his favor at the hearing is subject to such treatment. In raising this issue, the Defendant speculates that these witnesses "would likely have been helpful to his defense" and "could have assisted" the Defendant in his request that the trial court consider alternatives to full revocation and incarceration. However, he does not identify the standard of review, cite to applicable law governing the denial of continuances, or make argument beyond conclusory assertions that the result of the proceeding would have been any different. *See State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004) (noting the requirements for reversal of a trial court's denial of a continuance). Based on his failure to appropriately support his contentions, this issue is waived. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); *e.g.*, *Lee*, 2023 WL 1956964, at *12.

In addition to the briefing deficiencies, we conclude that many of the Defendant's allegations of error related to the revocation hearing are waived for his failure to raise them in the trial court. Namely, the Defendant did not object in the trial court to the non-sentencing judge's presiding over his hearing or to insufficient notice of the hearing. *See* Tenn. R. Evid. 103(a)(1); Tenn. R. Crim. P. 51(b); *see also State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020) (stating that the party who wishes to raise an issue on appeal first has an obligation to preserve that issue by raising a contemporaneous objection in the trial court). He likewise did not argue in the trial court that the alternative basis of his continuance request was to allow time for the underlying charges to be resolved. *See State v. Alder*, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001) (noting that a party is bound by the theory argued to the trial court and may not change or add theories on appeal). The State correctly notes in its brief that lack of notice was not raised in the lower court, and the issue is thus waived. We note that the same rationale applies to the additional arguments identified hereinabove. Even if the State does not argue for waiver, this court is not precluded from concluding that an issue is unpreserved because proper preservation is essential to facilitating our review. *See, e.g.*, *Rogers v. State*, No. M2010-01987-CCA-R3-

PD, 2012 WL 3776675, at *60 (Tenn. Crim. App. Aug. 30, 2012) ("[E]ven though the State does not argue waiver in response to this issue, we have concluded that the issue is waived.") (citing Tenn. Ct. Crim. App. R. 10(b))).

The Defendant also did not argue below that his constitutional rights would be violated if the trial court conducted a revocation hearing. Notably, constitutional arguments are not exempt from the preservation rules, and if not properly preserved, the issues are deemed waived on appeal. *See, e.g.*, *State v. Howard*, 504 S.W.3d 260, 277 (Tenn. 2016). However, as to this issue, the Defendant claims that "it is plain error for any court in Tennessee to violate [the Defendant's] probation" based on a preponderance of the evidence finding by the trial court, rather than insisting that it be proven to a jury beyond a reasonable doubt. The Defendant cites several cases in the context of jury trials to support this proposition, but he fails to identify any applicable law in the context of probation revocation proceedings, and he makes no attempt to address the plain error factors. *See State v. Bledsoe*, 226 S.W.3d 349, 355 (noting that the defendant bears the burden of persuading the appellate court that plain error exists). For these additional reasons, the issue is likewise waived. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); *e.g.*, *Lee*, 2023 WL 1956964, at *12.

Finally, waiver notwithstanding for failure to raise it below, the Defendant's argument regarding a non-sentencing judge's presiding over his revocation hearing is meritless. Tennessee Code Annotated section 40-35-311(b) clearly provides that a probation revocation hearing may be heard by "any judge of equal jurisdiction" as the sentencing judge. Besides, the Defendant affirmatively requested that the sentencing court be removed from his case. *See State v. Garland*, 617 S.W.2d 176, 186 (Tenn. Crim. App. 1981) (noting that the parties may not take advantage of errors they themselves invited the trial court to commit). Thus, we proceed to address the trial court's revocation of the Defendant's probation on the merits.

### B.    Probation Revocation

Appellate courts review a trial court's revocation of probation decision for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequences on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). If a trial court fails to state its findings and reasoning for the

revocation on the record, appellate courts may conduct a de novo review if the record is sufficiently developed, or the appellate court may remand the case for the trial court to make such findings. *Dagnan*, 641 S.W.3d at 759 (citing *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014)).

Probation revocation is a two-step consideration requiring trial courts to make two distinct determinations as to (1) whether to revoke probation and (2) what consequences will apply upon revocation. *Dagnan*, 641 S.W.3d at 757. No additional hearing is required for trial courts to determine the proper consequences for a revocation. *Id.* The trial court's findings do not need to be "particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id.* at 759 (citing *State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2021)).

"The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." Tenn. Code Ann. § 40-35-311(d)(1). "If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." *Id.*

1. The Violation Determination

The Defendant argues that the trial court's finding that he violated his probation was not supported by substantial evidence. In arguing this point, the Defendant focuses on the fact that the Defendant alerted the arresting officer to the presence of needles on his person, and he therefore ought not to have been charged with possession of drug paraphernalia pursuant to Tennessee Code Annotated section 40-7-124. The Defendant also points to the absence of other evidence that would tend to establish the possession of illegal drugs for sale rather than personal use. These arguments are without merit.

In this case, the trial court specifically found that the Defendant was in possession of three separate varieties of unlawful drug paraphernalia—not just the hypodermic needles—along with a substance admitted by the Defendant to be heroin, which is a Schedule I controlled substance. *See* Tenn. Code Ann. §§ 39-17-424(3), -406(c)(11). The testimony introduced at the hearing, which the trial court expressly accredited, supported this finding by a preponderance of the evidence: the arresting officer observed that the Defendant appeared to be under the influence, noted drug residue on both the spoon and the straw, and the Defendant both consented to a search and admitted that he had used heroin that day and currently possessed it in the form found in his wallet.

This court has previously concluded that "a police officer's testimony about the facts surrounding the arrest used as the basis for the violation 'constituted substantial evidence' and was 'sufficient to support the trial court's [revocation of a suspended sentence].'" *State v. Eaker*, No. M2013-01639-CCA-R3-CD, 2014 WL 546348, at *5 (Tenn. Crim. App. Feb. 11, 2014) (quoting *State v. Dodson*, M2005-01776-CCA-R3-CD, 2006 WL 1097497, at *3 (Tenn. Crim. App. Mar. 31, 2006)) (concluding that the officer's testimony "was straight-forward: upon executing a traffic stop, he found [the defendant] in possession of drug paraphernalia and a white powder, which he stated, based upon his experience as a law enforcement officer and as a drug task force agent, appeared to be methamphetamine[,]" and provided a sufficient basis for revoking probation); *cf. Carver v. State*, 570 S.W.2d 872, 873 (Tenn. Crim. App. 1978) (affirming the trial court's finding that the defendant violated his probation when a search he consented to revealed marijuana in his possession). The accredited testimony of Corporal Armour clearly constitutes substantial evidence that the Defendant had violated the terms of his probation.

As to the drug possession charge, the Defendant correctly notes that no proof of the amount of the substance was introduced at the hearing, other than Corporal Armour's testimony that he weighed the substance at the scene and that the amount he observed informed his charging decision. However, regardless of the amount, the Defendant points to no applicable law in this or any other jurisdiction to establish that the illegal possession of a Schedule I controlled substance, or a probationer's identification and admitted use thereof, does not constitute a violation of the terms and conditions of probation. *See, e.g.*, *State v. Cobble*, No. M2022-00598-CCA-R3-CD, 2023 WL 4611748, at *3 (Tenn. Crim. App. July 19, 2023) (concluding that the record contained substantial evidence of a violation following the defendant's admission of illegal drug use and positive drug screen), *no perm. app. filed*.

Further, the Defendant's reliance on the immunity provision in Tennessee Code Annotated section 40-7-124 does not entitle him to relief. Section 124(a) provides:

Before searching a person, a person's premises, or a person's vehicle, a law enforcement officer may ask the person whether the person is in possession of a hypodermic needle or other sharp object that may cut or puncture the officer, or whether a hypodermic needle or other sharp object is on the premises or in the vehicle to be searched. If there is a hypodermic needle or other sharp object on the person, on the person's premises, or in the person's vehicle, and the person alerts the law enforcement officer of such before the

search, the person shall not be charged with or prosecuted for possession of drug paraphernalia for the hypodermic needle or other sharp object.

However, the subsection immediately following this expressly states that this immunity is not extended "to any other drug paraphernalia that may be present and found during the search." *Id.* § -124(b). We note that the Defendant has not cited to any authority to support the proposition that this statute is applicable to the finding of a violation in probation revocation proceedings, but we need not reach that question under the facts of this case. Even if the Defendant were entitled to statutory immunity for the needles he possessed in the context of a probation violation, his argument fails as to the spoon and the straws, which the trial court explicitly found to be unlawful drug paraphernalia.

The proof in the record is sufficient to support the trial court's finding that the Defendant violated his probation.

### 2.    The Consequence Determination

The Defendant contends that the trial court "acted too harshly" by revoking his probation in full both because the evidence did not support the finding of a violation and because this was the first instance in which the Defendant was found to have violated his probation. As we have already determined that the record supports the finding of a violation in this case, we will address only the Defendant's argument regarding the trial court's imposition of incarceration as the consequence for the violation.

The Defendant does not identify the applicable law governing the trial court's imposition of incarceration, but the State urges us to rely on the prior version of Tennessee Code Annotated section 40-35-311, due to the Defendant having committed the underlying offenses prior to the 2021 amendment of this section. *See State v. Butler*, No. W2023-00566-CCA-R3-CD, 2023 WL 8234319, at *6 (Tenn. Crim. App. Nov. 28, 2023) (concluding that the applicable law governing probation revocations is that which was in effect at the time of the commission of the underlying offense), *no perm. app. filed*. The difference between these versions of the law is the sanctions that may be imposed for technical violations. Prior to this amendment, the trial court had the discretion to revoke probation based solely upon its finding of any sort of violation. Tenn. Code Ann. § 40-35-311(d), (e)(1) (2017). Under the current version of the statute, a trial court may not revoke probation for a felony offense based upon one instance of a technical violation. Tenn. Code Ann. § 40-35-311(d)(2).

However, we need not make this distinction, because the application of either version of the statute affords the trial court the discretion to revoke probation in the Defendant's case. *See* Tenn. Code Ann. § 40-35-311(g) (defining technical violations as, *inter alia*, "an act that violates the terms or conditions of probation *but does not constitute a new felony* [or] *new Class A misdemeanor*") (emphasis added). Even if we were to give the Defendant the benefit of applying the requirements of the updated section, the trial court in this case expressly found that he committed new offenses that are not classified as technical violations under the statute. The possession of a Schedule I controlled substance with the intent to sell, deliver, or manufacture is a Class B felony, and the possession of unlawful drug paraphernalia is a Class A misdemeanor. *See id.* § 39-17-417(a)(4), (b); -425(a)(2). Although no specific finding was made about the amount of the substance possessed, the trial court expressly found that the Defendant possessed heroin. Even if the weight of the substance was consistent with personal use, its possession still constitutes at least a Class A misdemeanor. *See id.* § -418(a), (c)(1), (d). The current prohibition against revocation of probation based on a single instance of a technical violation would not operate to the Defendant's benefit.

Because the trial court had the discretion to revoke the Defendant's probation, we need only determine whether it made the requisite findings regarding its reasoning as to the consequence imposed to support the presumption of reasonableness. As to the disposition of the revocation, the trial court has discretionary authority to (1) order confinement for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for the remainder of the unexpired term to a sentence of probation. *See id.* §§ -308(c), -310, -311(e)(2). We reiterate that such articulation need not be "particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Dagnan*, 641 S.W.3d at 759. The trial court's findings were not particularly lengthy or detailed in this case, but they did provide us with assurance that it had a reasoned basis for its decision. *See id.* The trial court considered the Defendant's lack of success on probation with regard to the violation, and we afford a presumption of reasonableness to its exercise of discretion in "choosing one of the statutory options available to it." *Id.* at 760. This court has repeatedly held that "an accused, already on [suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431 *4 (Tenn Crim. App. Dec. 16, 2022) (quoting *State v. Brumfield*, No. M2015-01940-CCA-R3-CD, 2016 WL 4151178, at *8 (Tenn. Crim. App. Aug. 10, 2016)). We conclude that the trial court did not abuse its discretion by imposing incarceration in this case.

- 10 -

C.     Correction of Revocation Order

Lastly, as pointed out by the State in its brief, we note that the trial court's revocation order purported to revoke only one of the Defendant's two year sentences. However, while there some inconsistency attended the trial court's oral ruling, the transcript of the hearing indicates that the trial court intended to revoke both sentences but apply credit for time previously served in custody. *See State v. Munson*, No. E2008-01525-CCA-R3-CD, No. 2009 WL 723434, at *2 (Tenn. Crim. App. Mar. 19, 2009) (applying the general rule that the transcript controls when it conflicts with the judgment in the context of probation revocation proceedings). The revocation order revoking only a single sentence listed the conviction offense as theft, but the record indicates that the probationary period for the Defendant's theft offense may have expired one day before the issuance of the probation revocation warrant. If this is the case, the trial court lacked jurisdiction to revoke the Defendant's probation on this sentence because only the sentence for the vandalism conviction was within an active probationary period. *See* Tenn. Code Ann. § 40-35-310, Sentencing Comm'n Cmts. (noting that the trial court's authority to revoke probation is limited to the period of probation). For clarity of the record and to avoid any future confusion, the trial court is hereby ordered to determine whether the probationary period for the Defendant's theft conviction had expired at the time the violation of probation warrant was issued. Upon making this determination, the trial court shall execute a corrected revocation order reflecting the appropriate action taken on the applicable conviction offense or offenses. *See* Tenn. R. Crim. P. 36 (allowing for the correction of clerical mistakes "at any time . . . arising from oversight or omission").

## III.     CONCLUSION

Based upon the foregoing and consideration of the record as a whole, we affirm the judgment of the trial court, but this case is remanded to the trial court for the entry of a corrected revocation order consistent with this opinion.


 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE

- 11 -